**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL |
| | : | |
| vs. | : | No:  01-CR-0131-10 |
| | : | (Hon. Sylvia H. Rambo, |
| Leslie Card, | : | U.S.D.J.) |
| Defendant | : | |
| | : | (Electronically Filed) |

**DEFENDANT LESLIE CARD'S SENTENCING MEMORANDUM,**
**INCLUDING MOTION FOR DOWNWARD VARIANCE UNDER 18 U.S.C. §3553(a)**

The Defendant **Leslie Card**, by and through the undersigned attorney, files this Sentencing Memorandum, including a Motion for Downward Variance Under 18 U.S.C. §3553(a), and respectfully states as follows:

I.  **INTRODUCTION.**

Mr. Card is before this Court for sentencing on May 8, 2008, having pleaded guilty to Count One of the instant indictment, charging him with criminal conspiracy to commit wire fraud and mail fraud, in violation of 18 U.S.C. §371. Mr. Card pleaded guilty at his arraignment before this Honorable Court on December 27, 2007.

Mr. Card is a Canadian citizen and resident of Toronto, Province of Ontario. After this indictment was filed in the Middle District of Pennsylvania, the government sought extradition of Mr. Card (and some of his co-defendants) from Canada to the United States.

As a result of these extradition proceedings, Mr. Card was arrested by Canadian law enforcement authorities and

incarcerated at Canadian detention centers three times, prior to his extradition to the United States.

Mr. Card initially appeared and was arraigned before this Honorable Court on December 27, 2007. He pleaded guilty to the above offense on December 27, 2007, pursuant to the written plea agreement dated November 15, 2007.

The advisory United States Sentencing Guidelines ("USSG"), as calculated in the final Pre-Sentence Investigation Report ("PSR") of January 28, 2008, call for an advisory custody range of 30 to 37 months on Count 1, based on an advisory Total Offense Level of 19 and an advisory Criminal History Category of I.

Mr. Card respectfully requests that this Honorable Court grant him his objections to the PSR and order the amendment of the PSR, including, but not limited to, the calculation of the advisory total offense level and the advisory recommended guidelines custody range, as more fully set forth below.

At the time of the sentencing, Mr. Card will have served a total of 294 days of incarceration on the charges of the instant indictment and respectfully requests that this prior time served be acknowledged on the PSR.

Mr. Card also respectfully requests that this Court grant him a downward variance pursuant to 18 U.S.C. §3553(a) and the decisions of the United States Supreme Court in *United States v. Booker*, 543 U.S. __, 125 S.Ct. 738 (2005) and the recent cases of *Gall v. United States*, 550 U.S. ___, 128 S.Ct. 586 (2007), and *Kimbrough v. United States*, 550 U.S. ___, 128 S.Ct. 558 (2007).

## II. __FACTUAL STATEMENT.__

Leslie Card is a 23-year old man, born in Kingston, Jamaica on August 12, 1969.  The family eventually moved to Toronto, Province of Ontario, Canada in 1980 and became Canadian citizens in 1984.  Mr. Card's family, including his mother and siblings (his father is deceased) reside in Toronto, Ontario, Canada.  Mr. Card keeps in close contact with his family.

Mr. Card graduated from high school in Toronto, Ontario, Canada and attended some college courses.

Mr. Card has three children from different relationships.  He has maintained contact with all three children (until his incarceration) and is in good relations with the mothers, as attested by the letters submitted by them to the Court through the U.S. Probation Office.  He provides support to the children as he is able.

As a result of the extradition proceedings, Mr. Card was arrested by Canadian law enforcement authorities and incarcerated at the Don Jail (Toronto, Ontario) on August 25, 2005, to show cause why he should not be extradited to the United States on the instant indictment; he requested, and was granted, bail and released from detention on December 1, 2005, having served 99 days of incarceration.

On June 21, 2007, he was again arrested by Canadian law enforcement authorities on the extradition case and detained at the Toronto West Detention Center, Toronto, Ontario; again he requested, and was granted, bail and released from detention on July 13, 2007 (agreeing to voluntarily surrender for extradition

after November 18th), having served a further 23 days of incarceration.

Finally, on November 19, 2007, Mr. Card voluntarily surrendered as expected and was confined temporarily at the Toronto West Detention Center, Toronto, Ontario, until the U.S. Marshal's Office obtained custody of his person in Canada and transported him to the Middle District of Pennsylvania. Mr. Card will have been confined continuously since the date of his surrender to May 8, 2008, having served a further 172 days of incarceration.

At the time of the sentencing, he will have served a total of 294 days of incarceration on the charges of the instant indictment.

Mr. Card initially appeared and was arraigned before this Honorable Court on December 27, 2007,

Mr. Card pleaded guilty to the above offenses, pursuant to the written plea agreement dated November 15, 2007. In the written plea agreement (drafted by the government) Mr. Card agreed to plead guilty to Count 1 of the instant indictment (in lieu of putting the government to the expense and time of going to trial). The government agreed to dismiss all other counts in the indictment, to recommend a three-level (instead of a two-level) reduction in the offense level for early acceptance of responsibility, and to specifically recommend that the 2000 Sentencing Guidelines are the applicable guidelines, that the amount of loss attributable to Mr. Card is more than $200,000 but less than $350,000, that the offense involved more than

4

minimal planning and was committed largely outside the United States, that Mr. Card should receive a two-point enhancement for his leadership role, and that no other sentencing enhancements apply.

## III. **OBJECTIONS TO PRE-SENTENCE INVESTIGATION REPORT.**

The United States Probation Office issued its draft PSR on January 8, 2008.  Mr. Card, through undersigned counsel, filed certain objections to it.  On or about April 22, 2008, an Addendum was made to the PSR.

Mr. Card respectfully makes the following objections to the PSR, as amended, as follows:

*Release Status, front page:* *Mr. Card objects to the wording of this paragraph, as follows: Mr. Card should be given credit for the time he has already served on this instant offense, from the time of his various arrests by (or voluntary surrender to) the Canadian law enforcement authorities on the government's petition for extradition on this instant indictment through his current incarceration: as follows:*

| | |
|---|---|
| *8/25/2005:* | *Arrested and detained (Don Jail, Toronto, Ontario, CANADA).* |
| *12/1/2005:* | *Released on bail.* |
| *6/21/2007:* | *Arrested and detained (Toronto West Detention Center, Toronto, Ontario, CANADA).* |
| *7/13/2007:* | *Released on bail.* |
| *11/19/2007:* | *Voluntarily surrendered and detained (Toronto West Detention  Center, Toronto, Ontario, CANADA); delivered to the U.S. Marshal for transportation to Harrisburg, Pa.* |
| *12/27/2007:* | *Initial appearance in Harrisburg.  Ordered detained.* |

*Paragraph No. 2, page no. 1:* *Mr. Card objects to the wording of this paragraph: the written plea agreement drafted by the U.S. Attorney's Office, to which Mr. Card agreed and signed, also includes paragraph 11, which states:*

*"Specific Sentencing Guidelines Recommendations.  With respect to the application of the United States Sentencing Commission Sentencing Guidelines to the defendant's conduct, the parties agree to recommend that the 2000 Sentencing   Guidelines are the applicable guidelines, the amount of loss attributable to the defendant is more than $200,000 but less than $350,000, the offense involved more than minimal planning and was committed largely outside the United States, the*

5

*defendant should receive a two-point enhancement for his leadership role, **and no other sentencing enhancements apply.**" [Emphasis added].*

*<u>Paragraph No. 23, page no. 5</u>- Mr. Card objects to the use of USSG §2F1.1(b)(3) to increase the advisory offense level by two (2) levels.*

*<u>Paragraph No. 28, page no. 5</u>- Mr. Card objects to the calculation of the advisory adjusted offense level, because of the prior objection to paragraph 23, above. **The correct advisory adjusted offense level should be a level 20.***

*<u>Paragraph No. 31, page no. 5</u>- Mr. Card objects to the calculation of the advisory total offense level, because of the prior objections to paragraphs 23 and 28, above. **The correct advisory total offense level should be a level 17.***

*<u>Paragraph No. 34, page no. 6</u>- Mr. Card wishes to further comment on the information provided in this paragraph. The amount of marijuana involved was less than one ounce and the time served by Mr. Card was approximately thirty (30 days).*

*<u>Paragraph No. 36, page no. 6</u>- Mr. Card wishes to further comment on the information provided in this paragraph. The events of fraud related to this Canadian charge are very similar, perhaps almost identical, to the events of fraud in the instant indictment and therefore, this is a related case to the instant indictment.*

*<u>Paragraph No. 52, page no.9</u>- Mr. Card objects to the calculation of the advisory custody range, because of the prior objections to paragraphs 23, 28 and 31, above. **The correct advisory custody range level should be calculated using an advisory total offense level of 17 and advisory criminal history category I, to yield an advisory custody range of 24 to 30 months.***

*<u>Paragraph No. 70, page no. 19</u>- Mr. Card objects to the conclusions of this paragraph that an upward departure could be considered. While Mr. Card has two convictions in Canada which were not counted (the last conviction is related to the instant indictment and would not be counted here in any event), pursuant to the advisory sentencing guidelines, in calculating the advisory criminal history category, there is no reason to believe that they are show significant criminal behavior or that if they were so counted, they would yield an advisory criminal history category greater than an advisory criminal history category I.*

*<u>Paragraph No. 71, page no. 19</u>- Mr. Card objects to the conclusions of this paragraph. Mr. Card believes that there may be some factors under 18 U.S.C. §3553(a) to be considered in determining his sentence as lower than the advisory custody range.*

Mr. Card respectfully requests that this Honorable Court

grant him his objections to the PSR and order the amendment of the

PSR, including, but not limited to, to reflect prior credit for

time served on this offense and the calculation of the advisory

total offense level and the advisory recommended guidelines custody range, as more fully set forth below.

## IV. <u>DISCUSSION.</u>

### A.    THE LAW OF THE CASE.

The sentencing law now in effect in the United States district courts is 18 U.S.C. §3553(a). The USSG are no longer mandatory but are only advisory in effect[1]. Under 18 U.S.C. §3553(a), the sentencing court is enjoined to impose a sentence that is **"sufficient but not greater than necessary"** to achieve just punishment in light of the seriousness of the offense, respect for law, deterrence, incapacitation to the extent necessary to protect the public, and needed rehabilitation and treatment in the most effective manner. 18 U.S.C. §3553(a)(2)(A)-(D).

On January 12, 2005, the United States Supreme Court entered a decision in the consolidated cases of *United States v. Booker* and *United States v. Fan-Fan*, 543 U.S. __, 125 S.Ct. 738 (2005); this decision was an outgrowth of the earlier cases in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000).

In the *Booker* case, the Supreme Court held that the *Blakely* rule applies to the federal sentencing guidelines: guidelines enhancements based on judge-found, rather than jury-found or admitted, facts, which increase the applicable sentencing range and thus the statutory maximum, violate the Sixth Amendment right

---

[1]    18 U.S.C. §3553(b)(1) and 18 U.S.C. §3742(e) were both struck down as unconstitutional by the U.S. Supreme Court in *United States v. Booker*, 543

to a jury trial.  The judicial remedy fashioned by the Supreme Court was to strike the mandatory language from the Sentencing Reform Act of 1984 and to render the federal sentencing guidelines, the USSG, "effectively advisory" in all cases.

**Therefore, the federal sentencing guidelines are now just one of many factors for a sentencing court to consider when fashioning a sentence** that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in 18 U.S.C. §3553(a)(2): a) retribution; b) deterrence; c) incapacitation; and d) rehabilitation.  **That a sentence be "sufficient but not greater than necessary" to comply with the four purposes of sentencing set forth in §3553(a) is now the overriding principle in sentencing.**

Thus, the sentencing court, in determining a constitutionally-valid sentence of "sufficient but not greater than necessary", must now consider five factors:

1)  the nature and circumstances of the offense and the history and characteristics of the defendant, as set forth in 18 U.S.C. §3553(a)(1);

2)  the kinds of sentences available, as set forth in 18 U.S.C. §3553(a)(3);

3)  the guidelines and policy statements issued by the Sentencing Commission, including the guideline range[2], as set forth in 18 U.S.C. §3553(a)(4) and (a)(5);

4)  the need to avoid unwarranted sentencing disparity among defendants with similar records that have been found guilty of

---

U.S. __, 125 S.Ct. 738, 756-7 (2005).
[2]     All of which are now advisory and non-mandatory.

similar conduct, as set forth in 18 U.S.C. §3553(a)(6); and,

5) the need to provide restitution to any victim of the offense, as set forth in 18 U.S.C. §3553(a)(1).

It is abundantly clear also that the "reasonableness" standard of sentencing applies even to a sentence which has been correctly calculated and lies within the applicable guidelines range. *United States v. Booker, supra*, at 794; *United States v. Morales-Chaires*, 2005 WL 3307395 (10th Cir. 2005). In other appellate circuits, the government's argument that a "within-guideline" sentence is per se "reasonable" has been rejected by those courts. *United States v. Webb*, 403 F.3d 373, 385, n.9 (6th Cir. 2005); *United States v. Crosby*, 397 F.3d 103, 115 (2nd Cir. 2005). Furthermore, a sentence which gives "considerable weight" or "heavy weight" or continues to rigidly follow the sentencing guidelines is constitutionally invalid because it will be making the advisory sentencing guidelines, in essence, mandatory. *U.S. v. Ranum*, 353 F.Supp.2d 984 (E.D.Wisc. 2005); *U.S. v. Myers*, 353 F.Supp.2d 1026 (S.D.Iowa 2005); *U.S. v. West*, __F.Supp.2d__, 2005 WL 180930 (S.D.N.Y. Jan. 27, 2005).

Recently, the United States Supreme Court in *Rita v. United States*, 550 U.S. ___, 127 S.Ct. 2456 (2007), reiterated that the sentencing court must fully analyze all of the 550 U.S. ___, 128 S.Ct. 586 (2007)factors and, in so doing, must impose a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of sentencing.

More recently, in *Gall v. United States*, 550 U.S. ___, 128

S.Ct. 586 (2007), Justice Stevens, writing the majority opinion, held, among other things, that, in case where an appellate court reversed the district court's granting of a substantial downward departure, there is no rule that requires "extraordinary" circumstances to justify a sentence outside the advisory sentencing guidelines range, and reversed the appellate court. In *Kimbrough v. United States*, 550 U.S. ___, 128 S.Ct. 558 (2007), the Supreme Court again upheld the discretionary powers of district courts in their use of the factors under 550 U.S. ___, 128 S.Ct. 586 (2007) to deviate downwards from the calculated custody range of the advisory sentencing guidelines.

Moreover, under 18 U.S.C. §3661, there is now no limitation placed on the information concerning a defendant's background, character and conduct which a sentencing court may receive and consider for the purpose of imposing an appropriate sentence.

Therefore, this Honorable Court is no longer bound by the strictures of the advisory sentencing guidelines. The Court need not follow the definitions of the advisory sentencing guidelines nor the calculations for the offense levels, particularly where the Court may believe that some punishment is called for the actions of the defendant but that the terms of imprisonment embodied in some of the guidelines is unnecessarily harsh under the circumstances.

In determining whether a sentence imposed is reasonable or not, the Third Circuit Court of Appeals has declared that it will examine "whether the record as a whole reflects rational and

10

meaningful consideration of the factors enumerated in 18 U.S.C. §3553(a)", *United States v. Grier*, 475 F.3d 556, 571 (3rd Cir. 2007) (en banc); *United States v. Cooper*, 437 F.3d 324, 329 (3rd Cir. 2006), and "whether [the §3553(a)] factors were reasonably applied to the circumstances of the case". *United States v. Cooper, supra,* at 330.

The District Courts in the Third Circuit must now follow a three-step process, in every sentencing case. *United States v. Gunter*, 462 F.3d 237 (3rd Cir. 2006). In *United States v. Goff*, Appeal No. 05-5524 (3rd Cir., August 30, 2007), the Third Circuit Court of Appeals detailed the three-step process:

(1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.

(2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.

(3) Finally, they are required to exercise their discretion by considering the relevant § 3553(a) factors, in setting the sentence they impose regardless [of] whether it varies from the sentence calculated under the Guidelines. *United States v. Goff, supra*, at 11.

**B.    OBJECTION TO THE RELEASE STATUS NOTICE.**

Mr. Card objects to the renewed failure by the PSR to give him proper credit for the prior incarceration that Mr. Card has undergone on the instant charge.

Mr. Card is **NOT** requesting prior credit for any detention because of a Canadian offense or charge but only for the prior incarceration because of the instant feral indictment in the Middle District of Pennsylvania.

11

Mr. Card is a Canadian citizen and resident of Toronto, Province of Ontario.  After this indictment was filed in the Middle District of Pennsylvania, the government sought extradition of Mr. Card (and some of his co-defendants) from Canada to the United States.

As a result of these extradition proceedings, Mr. Card was arrested by Canadian law enforcement authorities and incarcerated at Canadian detention centers three times, prior to his extradition to the United States.

As a result of the extradition proceedings, Mr. Card was arrested by Canadian law enforcement authorities and incarcerated at the Don Jail (Toronto, Ontario) on August 25, 2005, to show cause why he should not be extradited to the United States on the instant indictment; he requested, and was granted, bail and released from detention on December 1, 2005, having served 99 days of incarceration.

On June 21, 2007, he was again arrested by Canadian law enforcement authorities on the extradition case and detained at the Toronto West Detention Center, Toronto, Ontario; again he requested, and was granted, bail and released from detention on July 13, 2007 (agreeing to voluntarily surrender for extradition after November 18th), having served a further 23 days of incarceration.

Finally, on November 19, 2007, Mr. Card voluntarily surrendered as expected and was confined temporarily at the Toronto West Detention Center, Toronto, Ontario, until the U.S. Marshal's Office obtained custody of his person in Canada and

transported him to the Middle District of Pennsylvania.  Mr. Card will have been confined continuously since the date of his surrender to May 8, 2008, having served a further 172 days of incarceration.

At the sentencing, Mr. Card will provide documents recently received from Canada to document these times.  A copy of these documents have already been sent to the U.S. Probation Office.

At the time of the sentencing, he will have served a total of 294 days of incarceration on the charges of the instant indictment.

The PSR is correct that this objection is addressed to a point which will not affect the sentencing itself, that is, whether Mr. Card should be incarcerated or for how long.  However, as this Honorable Court is doubtlessly aware, the PSR is used not just for sentencing but also long afterwards in the custody of defendants by the U.S. Bureau of Prisons ("BOP").

The BOP uses the PSR to determine, among other things, whether or not prior credit for incarceration should be given to a sentenced defendant.  Should the information for prior credit not be displayed in the PSR prominently, the defendant after incarceration (when it is much more difficult to him) becomes responsible to supply this information to BOP to assess him proper prior credit for time already served on the sentence.

At the time of the sentencing, Mr. Card will have served a total of 294 days of incarceration on the charges of the instant indictment and respectfully requests that this prior time served be acknowledged on the PSR.

13

C.    **OBJECTION TO THE ADVISORY TOTAL OFFENSE CALCULATION.**

The PSR incorrectly determines that "the offense was committed through mass-marketing" (Par. No. 23, page no. 5). Based on that determination and pursuant to advisory USSG §2F1.1(b)(3), the PSR assigns a two-level increase to the advisory base offense level. The advisory adjusted offense level thus reached (including other upward adjustments admitted by Mr. Card and the government in the written plea agreement) is a level 22, which after the three-level deduction for acceptance of responsibility, yields an advisory total offense level of 19.

This advisory total offense level is later used, in Paragraph No. 52, page no. 9, to calculate the advisory custody range as 30 to 37 months.

The U.S. Attorney's Office of the Middle District of Pennsylvania is the agency allocated with the task and responsibility for prosecuting all federal crimes. In the instant case, the government decided to prosecute and to indict Mr. Card with the events and actions occurring from January 1999 to February 2001. On that basis, and against that background, the government and Mr. Card negotiated in good faith and entered into the written plea agreement which has been filed of record. It is worthy of notice that the United States Attorney's Office drafted the written plea agreement.

In the written plea agreement drafted by the government, Mr. Card agreed to plead guilty to Count 1 of the instant indictment. The government agreed to dismiss all other counts in the indictment, to recommend a three-level (instead of a two-

14

level) reduction in the offense level for early acceptance of responsibility, and, in Paragraph 11, to specifically recommend that the 2000 Sentencing Guidelines are the applicable guidelines, that the amount of loss attributable to Mr. Card is more than $200,000 but less than $350,000, that the offense involved more than minimal planning and was committed largely outside the United States, that Mr. Card should receive a two-point enhancement for his leadership role, and that no other sentencing enhancements apply.

On that basis, and against that background, Mr. Card entered his plea of guilty, having a reasonable estimate of what his advisory total offense level, and, thus, the possible range of custody, might be.

The PSR, however, by adding the mass-marketing enhancement under advisory USSG §2F1.1(b)(3), is changing the equation which was expected and accepted by the government and Mr. Card and is thus interfering with and undermining the system and the parameters under which the government and defendants operate to reach and enter into reasonable plea agreements. If this system and these parameters are thus interfered with and undermined, there will be no consistency nor confidence in the system of federal criminal law and defendants will choose in larger and larger numbers not to enter into plea agreements but to clog the court system with unnecessary trials, since there cannot be a reasonable expectation of what the possible ultimate sentence might be.

The U.S. Probation Office correctly states that this

Honorable Court is the ultimate arbiter of Mr. Card's punishment and it is not bound by the terms of the written plea agreement. Mr. Card agrees with that proposition.

Mr. Card's argument is not that this Honorable Court is bound by the terms of the written plea agreement and cannot consider and impose the higher, harsher sanction requested by the PSR, merely that it should not within the discretion with which this Honorable Court is empowered.

The United States Attorney's Office has very able, learned and zealous attorneys whose job it is to prosecute the federal laws of the United States. Their jobs are difficult and complex enough to accomplish and it should be presumed that they accomplish them for a specific purpose and with a specific result in mind.

The fact that the mass-marketing factor under advisory USSG §2F1.1(b)(3) (which may or may not be interpreted to apply to this factual situation) was not a part of the written plea agreement drafted by the government should not be presumed as an oversight or a mistake of the government, to be later corrected by the U.S. Probation Office, but as a reasoned decision of the government in its prosecutorial discretion to resolve its caseload on the basis of a non-trial disposition.

The government has also objected to the application of the the mass-marketing factor under advisory USSG §2F1.1(b)(3) and will not present any evidence to support it.

Mr. Card respectfully requests that this Honorable Court grant him his objection to the calculation of the advisory total

16

offense level in the PSR and make the advisory base offense level a level 20 (instead of a level 22) and therefore the advisory total offense level a level 17 (instead of a level 20).

**D.    UPON REASONABLE APPLICATION OF THE §3553(a) FACTORS TO THE CIRCUMSTANCES OF MR. CARD'S CASE, A SIGNIFICANT DOWNWARD VARIANCE IS REASONABLE.**

As in every case, this Court must wrestle with what a fair and just sentence that is "sufficient but not greater than necessary" for Mr. Card (See 18 U.S.C. §3553(a)). This instructive language is the very first sentence of 18 U.S.C. §3553(a).

As the Supreme Court in *United States v. Booker*, 543 U.S. __, 125 S.Ct. 738 (2005) has said, the Court is required to consider the applicable advisory guideline range, but impose such a sentence that considers the four purposes of sentencing as well as the sentencing factors set forth in §3553(a). Those four purposes of sentencing are:

> (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B)    to afford adequate deterrence to criminal conduct;
> (C)    to protect the public from further crimes of the defendant; and
> (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, section 3553(a) further directs sentencing courts to consider the factors listed:

> 1)    the nature and circumstances of the offense and the history and characteristics of the defendant

17

(§3553(a)(1));
2)   the need for the sentence imposed-
       (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
       (B) to afford adequate deterrence to criminal conduct;
       (C) to protect the public from further crimes of the defendant; and
       (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner(§3553(a)(2));
3)   the kinds of sentences available(§3553(a)(3));
4)   the kinds of sentences and the sentencing range established for-
       (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines-(§3553(a)(4));
5)   any pertinent policy statement-
       (A) issued by the Sentencing Commission..subject to any amendments made to such policy statement by act of Congress..(§3553(a)(5));
6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct(§ 3553(a)(6)); and,
7)   the need to provide restitution to any victims of the offense.(§3553(a)(7)).

This is not an exhaustive list of the factors the Court can consider, as "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. §3661.[3]

A discussion of the factors under §3553(a) is now required:

**1)   The nature and circumstances of the offense and the history and characteristics of the defendant (§3553(a)(1)).**

---

[3]   Other statutory sections also give the District Court direction in sentencing. In particular, in determining whether and to what extent imprisonment is appropriate based on the section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582 (emphasis added).

   2)    **The need for the sentence imposed-**
        **(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**
        **(B) to afford adequate deterrence to criminal conduct;**
        **(C) to protect the public from further crimes of the defendant; and**
        **(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner(§3553(a)(2)).**
   3)    **The kinds of sentences available(§3553(a)(3));**
   4)    **The kinds of sentences and the sentencing range established for-**
        **(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines-(§3553(a)(4));**
   5)    **Any pertinent policy statement-**
        **(A) issued by the Sentencing Commission..subject to any amendments made to such policy statement by act of Congress..(§3553(a)(5)).**

It is clear that a sentence of incarceration is called here as just punishment for the instant offense. Mr. Card is not asking for probation nor community confinement nor a sentence of time served, although many of his co-defendants have already received just that type of sentence. He is asking for a just sentence for the non-violent, non-drug crime he committed; a sentence that is **"sufficient but not greater than necessary"** to achieve just punishment in light of the seriousness of his non-violent offense, respect for law, deterrence, and incapacitation to the extent necessary to protect the public.

For the reasons stated above in Mr. Card's objections to the calculation of the advisory base offense level and advisory total offense level, this Honorable Court should grant a substantial downward variance from the advisory custody range of 30 to 37 months, as calculated in the PSR.

Furthermore, Mr. Card also believes, and respectfully urges this Honorable Court, that a sentence of substantially less than the 30 months indicated by the advisory guidelines custody range [using an advisory total offense level of 19 cross-matched with a Criminal History Category of I] will be **"sufficient but not greater than necessary"** to achieve just punishment. Mr. Card has accepted full responsibility for the fraud crime he did commit.

## V.   <u>SENTENCING OPTIONS.</u>

A.   Mr. Card respectfully suggests that, pursuant to U.S.S.G., Chapter 5, Part A, based on the advisory Total Offense Level of 17 and an advisory Criminal History Category of I, **<u>the advisory guideline range of imprisonment should be 24 to 30 months.</u>**

B.   Mr. Card respectfully requests that the Court grant his objections to the PSR and order the amendment of the PSR, particularly to detail his prior incarceration on the instant indictment, so that BOP might allow him proper prior credit on the sentence imposed herein.

C.   Mr. Card respectfully requests that the Court grant his motion for downward variance under 18 U.S.C. §3553(a) and relevant case law, and sentence him substantially below the advisory guideline range of imprisonment stated above.

D.   Mr. Card respectfully requests that the Court grant the government's motions to dismiss all other counts of the indictment.

E.   Mr. Card respectfully requests that this Court make a

20

recommendation to the U.S. Bureau of Prisons that he be designated to a federal institution in New York State near the border between the United States and Canada, so that his family in Toronto, Ontario, Canada, may visit him without undue inconvenience or expense.

     F.   Mr. Card respectfully requests that the Court not impose a fine, or impose only a minimal fine, because of Mr. Card's inability to pay.

Respectfully submitted,


 /s/ Guillermo L. Bosch
Guillermo L. Bosch
Attorney I.D. No. PA20279

Attorney for Defendant

109 Hanover Street
New Oxford, PA 17350-1605
717-624-7161
bosch2@comcast.net

Date:    May 5, 2008

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL |
| | : | |
| vs. | : | No: 01-CR-0131-10 |
| | : | (Hon. Sylvia H. Rambo, |
| Leslie Card, | : | U.S.D.J.) |
| Defendant | : | |
| | : | (Electronically Filed) |

**CERTIFICATE OF SERVICE**

I hereby certify that this document has been filed electronically and is available for viewing and downloading from the ECF system and that service upon all interested parties indicated below was made electronically on this date:

Christy H. Fawcett
Assistant U.S. Attorney
U.S. Attorney's Office
Federal Building and Courthouse, Suite 220
228 Walnut St.
Harrisburg, PA 17108-1754
christy.fawcett@usdoj.gov


/s/ Guillermo L. Bosch
Guillermo L. Bosch
Attorney I.D. No. PA20279

Attorney for Defendant

109 Hanover Street
New Oxford, PA 17350-1605
717-624-7161
bosch2@comcast.net

Date:      May 5, 2008

22